Chief Justice Robebtson
delivered the opinion of the Court.
This’writ of error is prosecuted to reverse a decree dismissing a bill in chancery filed -against the defendant (Crutcher) by the plaintiffs, (Underwood and Beauchamp) as trustees for T. B; ' *530 Monroe, alleging that they hold the elder legal title to a tract of land in the occupancy of their tenant*. (Haydon) and to which tract, or a portion thereof,, the defendant assert* a claim, under a junior grant.
They exhibit a regular deduction of a legal till©;to themselves, purporting to have originated under-the head right laws, and to be founded on removed certificates, surveyed and carried into grant in 1815*. •and pray for a decree compelling the defendant to relinquish to them his claim.
The defendant relies on a survey purporting t© have been made in April, 1800, on a removed certificate granted under the head right laws prior t® that time, and exhibits a copy of the survey, and of a patent issued thereon, since the date of the grants under which the plaintiffs- claim to hold. Upoa •these alone, without any. other document of title., he insists that the, title of the plaintiffs is invalid— that his own is.good and paramount in equity at-•least — and that the locations made in 1815 were il«legal and void, so far as they encroached on his survey, which, as he contends, was protected by the 12th section of an act of 1808, II Dig. 773, which declares that, “from and after the passage of this' act, no removed certificate shall be located on any survey made by virtue of any certificate heretofore granted,” and by the 5th section of an act of 1801, II Dig 754, which declares that, “no claims grant-ed under any law passed prior to the year 1800, for' .¡granting relief to settlers south of Green River* where the same is surveyed and a plat and certificate thereof returned to the Register’s office, shall he affected by any claim originated under the act of' December 20, 1800, entitled, ‘an act for settling and improving the vacant lands of this Commonwealth,'*’ or any law that may be hereafter passed.”
The plaintiffs insist that the defendant’s- survey should be deemed void, because he has exhibited no. certificate of settlement or of re-location.
The boundaries of the two claims are sufficiently identified to show that they conflict with each other;, but there is no proof that either party, or any person under whom either claims, was ever actually. *531 gettlecl on the land, or any part of the land contained in either of the grants.
¿ntn mater^’ Qnv amend-*" ed,takes-datefrotn amend“sn<"
Loeatioa made on re,-moved certificate, granted by county ct. since flOth Dec. 1800, illegal arid void, unless made with the county-court; entry-with survey,», or not sufficient. Effect of second sec. of the act of 18Q4.J1 Pip 769.
Court vyiil' not presume location to-, exist which is not shewn.
. The plaintiffs’ two surveys, both made in 1815, purport to have been on entries made in. the surveyor’s office on removed certificates; one of the entries was made in 1815, the other was made in 1801, and so .amended in 1815, as to interfere with the defendant’s survey. They will both be, therefore,, considered: as made in 1815.
In the cáse of Monroe vs. Walker, II Marsh, 402, this court decided that a location made on a removed certificate, which had been' granted by a county court, since the 20th of December, 1800, will be illegal and void unless, like the original, it shall have been made in, and certified by the county court. Tne second section of the act of 1804, If Dig. 759, .authorizing the removal and re-location of certificates, applies evidently to such certificates as had been granted by. commissioners prior to December 20, 1800, as well as to such as may have been granted by the county courts since that time; and therefore, according to the doctrine settled in Monroe vs. Walker, it is not material to enquire (had we even the means of ascertaining) whether the certificates, Under which the plaintiffs claim, were granted by commissioners or by a county court; because the locations, as exhibited, seem, prima facie, to have been-made since 1804, and with a surveyor instead of a county court. The entry made prior to 1804, but afterwards withdrawn, and in 1815 amended so a,s interfere with the defendant’s survey, must, so far a;s it interferes, be deemed to have been made in 1815, and not before. Therefore, without enquiring into-the right to have withdrawn and amended the entry, the authority of the case of Monroe vs. Walker, and the act of 1804, applied according to its obvious import, seem to denounce the entries rrtadc with the. surveyor in 1815 as illegal and void.
The locations, as made with the surveyor,, having been exhibited, and no county court certificates háving been shewn, we are not allowed to presume that locations on removed certificates were made according to law, in the county court; nor could we, with. *532 out seeing such locations, ascertain whether or not the surveys were made conformably to them (even if they exist.)
Th entry void, it does 2iot follow t.hat tbo patent issued upon it is void,
X Dig. 251, p<"puo having i.e^al title ai d possession may maintain bill i o compel relinquishment by junior patentee.
Comp’t with mere patent on void entry cannot have decree for “ repose” vs. def’t, who has survey and junior patont, unless defendant’s claim he yotd.
But though the entries may be void, the patents are not necessarily so also. A patent, when attacked incidentally (as in this case,) cannot be declared void unless it be procured by actual fraud, or had been declared void by the law, or be void on its face. Atchley vs. Latham, II Litt. 363; Jennings et al. vs. Whitaker, IV Mon. 50.
According to the established construction of the act of 1796, I Digest, 221, authorizing “any person* having both the legal title to and possession of land,rí to maintain a bill in chancery for a relinquishment, by any adversary claimant, the elder grant, unless void or fraudulent, may, without any extraneous proof of equity, entitle a complainant under that’ statute to relibf. Consequently, had not the entries of 1815 been exhibited, the plaintiffs might, without doubt, have been entitled to the relief sought by their bill, unless the defendant had shewn a right which should overreach their patent. But if they have shewn that they have no equity’, can they be entitled to a decree merely because they have the elder legal title? They may, according to the interpretation of the act of 1796, if it appear satisfactorily that the claim of the defendant is void. Unless the court can be authorized to declare the defendant’s survey void, the patent of the plaintiffs, though not void, will not entitle them to a decree compelling him to surrender* his claim to them. The defendant’s claim belongs to a-peculiar class, depem dent on peculiar rules,
If it appear that the defendant has no title, the plaintiffs being valid, and vesting in them the legal title, will entitle them to a decree fo.r repose from annoyance by his claim. But, .as he has a patent founded on a survey purporting to .have been made in April, 1800, the acts of 1801 and of 1808 so far protect him against their patents that, standing as complainants on void entries, they cannot obtain a decree against him unless it be the duty of this court to presump, as it is now asked to presume, that Jiis survey is void.
t,;Uj no anthoúty to 5''“ut ?UIÍ1.fí_ men, „r jooa_ tion on remo» °ortiii' c‘l ts-
Thir I section ^g’ an’ thorizo connt.f court» to fan?sC(>f locn^ tion. That power given ’
Notoriety not required un-; authorizing commis«ionurs tqgr\nt settlement. - Difference ■’«tween the systeraTnd'^ county court-.ystem.
'íhe defendant’s right must be tested by the laws "in force at the date of his survey. At that time the county courts had no authority to grant certificates of settlement or of locations on removed certificates ■and it is evident, that none of the acts of assembly required or autliorizcd commissioners to give certn imates of location on removed certificates. Not only did no act of assembly give such a power or even ailude constructively to its exercise, but it was unpossible for commissioners to exercise it in 1800, when there was no legal provision for their action or creation. All that was required in locating a removed certificate, in 1800, was that the holder should have shewn to the county court that he had a legal right to remove his location, and, producing a certificate of that fact, have made a location in the survey* or’s office.
The third section of the act of 1799, II Dig- 748, under which the defendant’s survey was made, did not authorize the county courts to give certificates of location. That power was vested in them for five first time by the act of December 20th, 1800. This not only results from a consistent and practical construction of the prior acts of assembly, but may be inferred to have been the opinion of this court in the case of Monroe vs. Walker, supra. A county court certificate of location on the removed certificate was, therefore, not necessary to the validity of the defendant’s survey.
Nor was notoriety, absolute or constructive, in the calls of his entry, indispensable to the security of the defendant’s survey. That survey was made under a peculiar statutory system, that is, the Head Right laws, in force prior to' the institution of-the countv court svstem, more comprehensive and tiermanent, and therefore more careful and exact in its requisitions. The two systems are, in some respects, essentially distinct and different. Monroe vs. Walker, supra. The first (or commissioner system) only required the commissioners to give a certificate of settlement right ‘-‘describing particularly the bounds of the land agreeably to the location handed into the court by the person claiming the same.” The last (or county court system) required a certificate from the *534 county court containing “a special location describing* as accurately as may be, the land contemplated.” The first only required the holder of a removed certificate to ma'ic “ an entry” in the surveyor’s office ; the last required a county court certificate of the special' location describing the laudas accurately as the law required the county court to describe a certificate of settlement.
Fifth see. of l80lTnteiiclod •to secure surveya made aot^Jimiertheto Gommifsiooer system, as U.c^couni^ oourt system, unless, void, .
In speaking of locations on removed certificates unt^er l*le county court system, this court said, in Monroe vs. Walker, “ if the surveyor is allowed to receive an entry witiiout a certificate, he has no rule to £° by — the certificate does not exist to guide him —and the acts have prescribed no rules by which such an entry should be made or measured.” In the saine same case the court used the following language — “the court has been satisfied thatthe claims granted previous to the year 1800, usually called oommissionor’s certificates, depend on their own peculiar laws, and are not to be blended with the county court system further than the express word? of particular subsequent laws may have blended them.”
We have already suggested how far the two systems were blended prospectively by the act of 1804, But the defendant’s survey is not affected by the •act of 1804. Then it seems to us that, prior to th.e adoption of the county court system, the Head Right law did not require any other description in a location than such as might be essential to identity. Notoriety seems not to have been required until a more extended system was adopted by the act of December 20th, 1800,
It also seems to us to he fairly inferrible, that the legislature did not intend that any survey, made by authority of any Head Right law prior to the date of the act of 180S,whether conformable to entry or not, should “ affected11 by any location of a removed certificate made after that time; and that the object of the 5th section of the act of 1801 was to secure, as made prior to the date of that act, all surveys on claims originating under the commissioner system against all claims originating under the county court sys *535 íém, provided the surveys thus made under the first System, or prior to the date of the act of 1800, had been authorized by Jaw, or Were not, in otJier words, void. If such be not the true construction and effect of those statutes, tire enactment of them was a work of supererogation ; for if they were intended to embrace only such surveys as had been made conformable to location, or to protect them only so far as they had been so conformable, these statutes can have no practical operation, because, had they never been enacted, such surveys would, to the same extent, have remained perfectly secure.
Upon de&t exhibiting; p° terlt ^nder the Hoad Right law, oourtwdl 0 an
If the defendant’s survey was made in consequence of a legally removed certificate, it is our opinion that it should bo deemed to be a survey “ by virtue of a certificate” granted prior to 1808, and that hi« claim should be deemed a “ claim granted by a law passed prior to the year 1800,” because it u originated"" from such a certificate and was “ granted” or •bellowed by such a law; and because, also, it was evidently the intention of the legislature to give to claims originating prior to the county court law of 1800 a preference over claims originating under that law; and wo have a right to infer that in authorizing the removal of certificates, the legislature intended that the holder should not be prejudiced, but that his removed location should possess all the-dignity of his certificate.
If, then, the defendant’s survey was made on ale-gaily removed certificate, the exhibition of an entry was not necessary for the purpose of shewing a con-fortuity of the survey to its calls, and the defendant’s claim would be protected by the act of 1808, and probably by that of 1801.
But the plaintiffs insist that, as the defendant has not shewn, by some proof direct and express, that he had a certificate of settlement and had it removed according to the act of 1799, and as he has not exhibited any entry, his survey should be deemed and treated by this court as illegal and void. We do not think so. We should rather presume that the surveyor and register acted legally, and certified the froth a,nd nothing bnt. the truth; and that., therefore.; *536 these were a regularly removed certificate and an entry, and that the survey and patent are not false, and void. This court has presumed from a survey and patent, that there had been a warrant. Hart’s Heirs vs. Young, MI J. J. Marshall, 408.
Whom complajnant exhibits n want of equity independent of ■patent, def’t «cocí not exhibit hi3 entry in such case as the present, because it is not n comparison of equities, and his survey is protected by the ■acts of ISO!' and 1808,tho’ it doe* not correspond with his en- - try.
Bill dismissed and putties referred to !t'hc law.
The patent itself, containing the recitals which it does, is, according to rational and legal presumption, prima facie evidence of an intrinsic equity. That •alone would not, however, be sufficient, in an ordinary case, in opposition to an elder grant. But this is a peculiar case, and depends on peculiar and anomalous laws. The plaintiffs, by exhibiting the entries of 1815, have shewn, prima facie, that they have no equitable right independent of their patents. The exhibition of the defendant’s entry is not necessary* as it might be in an ordinary case, to prove the relative character and effect of his equity when competing with an elder legal or a subsisting equitable right;-' because the laws of 1801 and of 1808 may protect him even though his survey and his entry may not correspond. If the attitude of the defendant had been transposed, and he had, by an original or cross hill, asked a decree compelling the plaintiffs to relinquish their legal title, (perhaps) the chancellor might have required him to have established a valid and superior equity by oilier and more direct and unquestionable proof than any which he has furnished.
But standing on defensive ground, with his survey and patent, and the acts of 1801 and 1808 in his hands, resisting a prayer for a surrender of his claim to the plaintiffs only because they happen to have older patents founded on void entries, we are of' opinion that the.presumptions of law are so far in his favor as to justify the chancellor in declaring, as he has done to the parties by the decree, “ 1 will not, in such a case, interfere, but will, by dismissing the bill* leave you and your claims in stedu quo antelilem, except that the plaintiffs will not be allowed to bring another bill for the same purpose.” This is, we think, as much as the plaintiffs have a just right to ask, or; expect, from the facts as presented to this court.
If the defendant shall hereafter become an as.sail“ *537 ant, and ask the chancellor to help him to deprive the plaintiffs of their legal title and of their possession, (if they have the possession) then the parties may have an opportunity of investigating their relative rights in a manner more scrutinizing, certain and effectual than that which the record in this case exhibits. Until then, they must stand as the decree of the circuit court placed them, out'of the pale of the act of 1796 authorizing such suits as this in prescribed cases.
Court will not presume against recitals in survey and patent that there was no regularly removed certificate and no entry.
Monroe, Brown and Morehead, for plaintiffs ; Crittenden, for defendant.
We do not feel authorized to declare that the defendant’s survey is void, without any fact from which such a deduction could be made according to a dictate of reason or a principle of equity ; and if it be not void, the plaintiffs have no right to the decree sought in their bill. More especially, as Mark Hardin, who made the entries in 1815, was then acquainted with the boundaries of that survey, and intentionally encroached upon them.
If there was no original certificate, or if that certificate was not removed by authority of law, or if there was no entry, the defendant’s survey may be void. But, in the face of the récitals in the survey and patent, and of the presumptions thence resulting, we cannot, in the absence of proof or of circumstances tending to create even a suspicion of fraud or imposture, presume, against the defendant and in favor of the plaintiffs, in such a case as this, that -the defendant’s survey was illegal and void and his patent fraudulent. Consequently, the plaintiffs have failed to shew, that they are entitled to the extraordinarv relief sought by their bill.
Wherefore, the deeree of the circuit court must be affirmed.